# United States District Court
# Central District of California

| | |
|---|---|
| CRYSTAL WATERS, an individual, and TONY VALENTI, an individual, on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>    v.<br><br>KOHL'S DEPARTMENT STORES, INC., a corporation; and DOES 1–100,<br><br>           Defendants. | Case No. 2:18-CV-00328-ODW-AFM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO REMAND [24]** |

## I.  INTRODUCTION

This is a putative class action lawsuit brought by Plaintiffs Crystal Waters and Tony Valenti against Defendant Kohl's Department Stores, Inc. ("Kohl's"). On February 15, 2017, Plaintiffs filed their initial Complaint in state court. (Compl., ECF No. 1-1.) Kohl's subsequently removed the case to this Court. *See Waters v. Kohl's Dep't Stores, Inc.*, Case 2:17-cv-02325-OWD-AFM (C.D. Cal. June 27, 2017) ("*Waters I*"). On June 28, 2017, the Court remanded the case to the Los Angeles Superior Court. (*Waters I* Remand Order, ECF No. 23.) Four months after remand, Kohl's removed the case a second time. (Not. Removal, ECF No. 1.)

Plaintiffs filed the pending remand motion on January 29, 2018. (Mot., ECF No. 24.) Plaintiffs maintain that the *Waters I* Remand Order forecloses successive removal attempts in the absence of a new factual basis or a change in circumstances. (Mot. 2.) Kohl's argues that either the continued accrual of putative damages, or its own analysis of its internal sales data, or both, constitute a change in circumstances that entitles it to successive removal. (Opp'n 1, ECF No. 26.) For the reasons discussed below, the Court finds no change in circumstances permitting successive removal, and accordingly, the Court **GRANTS** Plaintiffs' motion to remand. The Court also **DENIES** Plaintiffs' request for attorney's fees and costs.[1]

## II. BACKGROUND

### A. Factual Background

Kohl's is a nationwide department store chain with 116 stores in the State of California. (Compl. ¶ 12, ECF No. 1-1.) From time to time, Kohl's implements a rewards program in which customers receive Kohl's Cash coupons when they purchase items from Kohl's. (*Id.* ¶ 15.) For every $50 a customer spends at Kohl's, he or she earns $10 in "Kohl's Cash." (*Id.*) The customer may then use the Kohl's Cash for a future purchase, and the value of the Kohl's Cash will be deducted from the total amount owed. (*Id.*)

This dispute arises because in the four years prior to the filing of the Complaint, customers used Kohl's Cash to purchase products in conjunction with percent-off discount coupons that Kohl's also offered. (*Id.* ¶ 18.) Plaintiffs are regular shoppers at Kohl's who engaged in such transactions. (*Id.* ¶¶ 6, 7, 25, 27.) To calculate the amount owed on these purchases, Kohl's would first apply the Kohl's Cash to the total purchase price, and then apply the percent-off discount to the amount that remained. (*Id.* ¶ 18.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

1    Plaintiffs object to this practice and assert that Kohl's should treat Kohl's Cash
2 like actual cash. This, they claim, would require Kohl's to first apply the percent-off
3 discount to the total purchase price, and then apply the Kohl's Cash to the remaining
4 amount. (*Id.* ¶¶ 18, 19.)

5    A simple hypothetical example, presented by Plaintiffs in their Complaint and
6 adopted by Kohl's in subsequent filings, suffices to demonstrate the controversy: A
7 shopper enters Kohl's with $60 in Kohl's Cash, earned from a prior purchase of a
8 $300 blender. The shopper also has a separate coupon for 20% off an entire purchase.
9 The shopper wishes to buy a toaster whose regular price is $100. Plaintiffs argue that
10 Kohl's should first apply the 20% coupon, and then subtract the $60 in Kohl's Cash,
11 so that the amount owed at the cash register is $20. Instead, Kohl's first subtracts the
12 $60 in Kohl's Cash, and then applies the 20% coupon to the remaining $40 balance,
13 so that the amount owed in the transaction is $32. It is the $12 difference between
14 these two results that Plaintiffs place into controversy.[2] (Compl. ¶ 20.)

15    Plaintiffs allege an additional class of damages arising out of Kohl's methods of
16 calculation. When a customer returns a product (in the aforementioned example, the
17 blender), Kohl's deducts from the refund the amount of Kohl's Cash that the customer
18 redeemed since the initial purchase, *without* making any adjustments for customers
19 who used a percent-off coupon with the Kohl's Cash. (*Id.* ¶ 23). In Plaintiffs'
20 hypothetical, the $60 in Kohl's Cash was originally obtained through the purchase of
21 a $300 blender. Were the customer to return that blender after the purchases

---

[2] The amount in controversy for each transaction is determined by multiplying the amount of redeemed Kohl's Cash by the percent discount offered on the transaction. Working with Plaintiffs' hypothetical, let $x$ be the undiscounted price of the toaster; let $k$ be the amount of Kohl's Cash used for the purchase; and let $p$ be the percentage discount offered, expressed as a decimal.

$$\text{Kohl's calculation of amount owed: } (x - k)(1-p)$$
$$\text{Customers' desired calculation of amount owed: } x(1-p) - k$$

By subtracting the second expression from the first, one can calculate that the difference between these two expressions is $kp$, that is, the amount of Kohl's Cash used multiplied by the average percent discount.

described above, he or she would receive only $240 in return for the blender. The $60 difference is a loss to that customer and an amount paid to Kohl's. But the customer already spent $32 on the toaster. Therefore, the customer has given Kohl's $60 + $32 = $92 for an item that would have cost $80 if the customer had never used the Kohl's Cash in the first place. The difference between these two costs is $12, and Plaintiffs also place this amount into controversy.[3] (*Id.* ¶ 23.)

A notice printed in boldface type on the face of Kohl's Cash coupons informs customers of Kohl's methods of calculation when Kohl's Cash is used in conjunction with a percent-off coupon. (Decl. of Jordan S. Esensten ("Esensten Decl.") Ex. 10 at 8, ECF No. 24-2.)

**B.     Procedural Background**

On February 15, 2017, Plaintiffs filed a Complaint in the Superior Court of California, County of Los Angeles. (Compl. 1.) The next month, Kohl's removed the case to federal court. In its Notice of Removal, Kohl's contended that the amount in controversy in this suit exceeded $5 million, sufficient for jurisdiction under the Class Action Fairness Act ("CAFA"). (*Waters I* Not. Removal ¶¶ 14–17, ECF No. 1.) In support of this contention, Kohl's alleged only that total amount spent in transactions in which Kohl's Cash was used in conjunction with a percent-off discount "well exceed[ed] $5,000,000." (*Id.* ¶ 16.)

However, one cannot calculate the amount in controversy armed only with the total amount spent across all the contested transactions. To calculate the amount in controversy, the total amount of redeemed Kohl's Cash must be multiplied by the average percent discount offered across all contested transactions ("Average Percent Discount"). *See supra* note 2.

---

[3] Whether this hypothetical customer returned the blender or not, the amount in controversy as to this customer is $12. If the customer did *not* return the blender, the customer wants back the $12 of what Plaintiffs call "Unredeemed Kohl's Cash;" if the customer *did* return the blender, the customer wants back the $12 overpayment on the toaster.

4

Apparently realizing this fact, Kohl's filed a supplemental declaration, alleging that the amount of Kohl's Cash used in conjunction with a percent-off discount over the past four years ("redeemed Kohl's Cash") was "more than $25 million." (*Waters I* Decl. of Jessica Stemper ("Stemper Decl. I") ¶ 7, ECF No. 19-1.) Kohl's also alleged that the Average Percent Discount was 20%, and that, therefore, the amount in controversy exceeded $5 million. (*Id.* ¶¶ 7–9.) However, Kohl's provided no evidentiary support for this 20% figure. (*Id.*)

Kohl's was aware at the time of the first removal that its allegations might fail to establish the minimum amount in controversy for CAFA jurisdiction. On May 9, 2017, counsel for Plaintiffs encouraged counsel for Kohl's to supplement its evidence, asserting that the evidence in Kohl's supplemental declaration "could not support Kohl's amount in controversy calculation because it was based on an unsupported assumption rather than Kohl's own records." (Esensten Decl. ¶ 10.) Nevertheless, Kohl's declined to calculate the Average Percent Discount across the disputed transactions. Instead, Kohl's evidently assumed that, because 20% was the figure Plaintiffs used in their toaster example, Plaintiffs were actually alleging that the average percent discount was 20%. (Stemper Decl. I ¶ 5.)

On this evidence, the Court ruled that Kohl's had not shown the amount in controversy exceeded $5 million and remanded the case. (*Waters I* Remand Order 5.)

Shortly thereafter, Kohl's filed a demurrer in state court, which that court denied. (Esensten Decl. Ex. 11 at 2.) Kohl's then informed the court of its desire to move for summary judgment, and the court gave Kohl's until January 16, 2018 to file the motion. (*Id.*) Four days before this deadline, and nearly ten months after its first removal attempt, Kohl's removed the case for the second time. (Not. Removal, ECF No. 1.) Kohl's simultaneously provided to the court, under seal, sensitive sales data—data that, according to Kohl's, took "considerable effort" to procure—in support of its amount-in-controversy allegation. (Decl. of Jessica Stemper ("Stemper Decl. II") ¶ 7,

ECF No. 1-2.) In those papers was the figure Kohl's refused to provide in *Waters I*: the actual Average Percent Discount. (*Id.*)

### III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl.1; *see, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The right of removal is entirely a creature of statute," *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002), and the party seeking to avail itself of a removal statute bears the burden of showing that removal is appropriate. *See Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (confirming applicability of this standard when removing pursuant to CAFA).

Under CAFA a party may avail itself of federal jurisdiction when "the amount in controversy exceeds $5 million, there is minimal diversity between the parties, and the number of proposed class members is at least 100." *Taylor v. Cox Commc'ns Cal., LLC*, No. CV 16-01915-CJC(JPRx), 2016 WL 2902459, at *2 (C.D. Cal. May 18, 2016); 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B).

In general, removal statutes are to be strictly construed, and if there is "any doubt as to the right of removal in the first place," then the case must be remanded. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, this presumption does not extend to CAFA cases. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014) ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."); *see also* S.Rep. No. 109–14, p. 43 (2005) ("[CAFA's] provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

## IV. DISCUSSION

Kohl's maintains that the jurisdictional requirements are met, and the Court should retain jurisdiction over this case. Plaintiffs do not dispute whether CAFA's jurisdictional requirements are met; rather, they argue that Kohl's second attempt at removal is an improper successive removal.

To win this motion, Kohl's, as the party removing this case to federal court for the second time, bears the burden of showing that it is entitled to this successive removal, and that it meets CAFA's jurisdictional requirements. Regardless of Kohl's showing, Plaintiffs can also prevail on this motion by showing that the 30-day window for removal under 28 U.S.C. § 1446(b)(1) has expired, or, alternately, that Kohl's has waived its right to remove by litigating the case in state court. Plaintiffs also ask for costs and attorney's fees.

Kohl's argues that it is entitled to a second chance at removal because, since the first remand to state court, the circumstances underlying the case have changed in two ways: (1) putative damages have continued to accrue, and (2) Kohl's gathered sales data and calculated a figure that it had not previously tracked. For the reasons discussed below, these events do not constitute a change in circumstances or new factual basis entitling Kohl's to successive removal. Therefore, the Court declines to address Plaintiffs' arguments regarding the 30-day window and waiver.

**A. Successive Removal**

The events that have occurred since this Court remanded this case last year do not entitle Kohl's to a successive removal. "Where a court has previously remanded a removed action for a defendant's failure to meet its burden, successive notices of removal, though not necessarily barred, generally must be based on information not available at the prior removal." *Sweet v. United Parcel Serv., Inc.*, No. CV 09-02653 DDP (RZx), 2009 WL 1664644, at *3 (C.D. Cal. June 15, 2009); *see also Barahona v. Orkin*, No. CV 08-04634-RGK (SHx), 2008 WL 4724054, at *2 (C.D. Cal. Oct. 21, 2008) (explaining that successive removals must be based on "newly discovered facts

not available at the time of the first removal"); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 493 (5th Cir. 1996). Courts have also recognized that a relevant change in circumstances will allow a defendant a successive removal. *See Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 732 (9th Cir. 1991) (allowing successive removal after recent passage of a federal law that created a new category of federal jurisdiction); *see also Reyes v. Dollar Tree Stores*, 781 F.3d 1185, 1190 (9th Cir. 2015) (allowing successive removal after the state court certified a class broader than the class alleged by plaintiff during the first removal).

Kohl's argues that its newly calculated sales figures and the continued accrual of putative damages constitute "information not available at the prior removal" or "newly discovered facts." Under a strict interpretation of these phrases, Kohl's is not wrong. However, in the cases where courts allowed successive removal based on new facts, those new facts put the defendant in a different position compared to where it stood during the first removal, in the sense that the new facts gave the defendant a newfound ability to allege federal jurisdiction that it did not have during its first removal.

For example, in *Rea v. Michaels Stores*, 742 F.3d 1234 (9th Cir. 2014), the court allowed successive removal one day after the United States Supreme Court held that a plaintiff could not defeat CAFA jurisdiction by expressly waiving damages in excess of $5 million. *Id.* at 1238. The court reasoned that the change in law meant that the plaintiffs' initial pleading permitted the defendant to allege CAFA jurisdiction where it could not previously do so. *Id.* To deny the defendant a second removal attempt in light of the new law, the court reasoned, would be improper. *Id.*

In *Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1090 (C.D. Cal. 2005), the makers of Barbie dolls sued the maker of Bratz dolls for conversion and misappropriation. Defendant removed on the basis of diversity. *Id.* at 1085. Mattel argued that, because it was not clear that the rights to Bratz, which were worth several million dollars, were at issue, the defendant could not allege an amount in controversy

over $75,000. *Id.* at 1086. The court agreed, and remanded the case. *Id.* On defendant's second removal attempt, the court observed that in the interim Mattel had, among other things, "vigorously pursued discovery relating to the Bratz," showing that Mattel acknowledged that the rights to Bratz were indeed at issue. *Id.* at 1094. This newfound acknowledgment was a change in position on the part of the plaintiff that entitled the defendant to a successive removal. *See id.* at 1089. *Accord Sweet*, 2009 WL 1664644, at *4 (holding that a plaintiff's admission, in deposition, that she did not intend to leave California, was a new fact that completed the puzzle of diversity jurisdiction and allowed defendant a second chance at removal).

By contrast, courts will disallow successive removal when the defendant is no more able to show federal jurisdiction at the second removal than it was at the first removal. In *Jones v. JC Penney Corp.*, No. CV 11–5631 PSG (SHx), 2011 WL 4529406 (C.D. Cal. Sept. 28, 2011), the defendant department store removed the case after a failed first attempt. *Id.* at *1. The defendant argued, rather cleverly, that the district court's first remand order was a change in circumstances that informed the defendant that its first theory of federal jurisdiction was invalid, thereby allowing successive removal. *Id.* The court observed that the prior remand order implicated no new facts or pleadings, and it therefore could not be the basis for successive removal. *Id.* at *3. As the court in *Jones* found, a defendant cannot rely on a jurisdictional basis for successive removal when it could have asserted that jurisdictional basis in its first removal notice, but did not. *See id.*

The rule barring successive removal is strict. Even when the first remand was due to a procedural error on the part of the defendant, the defendant must jump the hurdles for successive removal. *See Barahona*, 2008 WL 4724054, at *2 (denying defendant a second chance to plead diversity jurisdiction when defendant's first notice of removal failed because it alleged only the residence, not the citizenship, of a plaintiff); *Nichols v. HealthSouth Corp.*, No. 2:12–cv–4073–SLB, 2013 WL 5442064, at *5 (N.D. Ala. Sept. 27, 2013) (prohibiting successive removal, when remand after

first removal was due to defendant's failure to include required state court documents with Notice of Removal). In some cases, courts have disallowed successive removal even when the failure of the first removal was due entirely to the court's own error. *See Seedman v. U.S. Dist. Court for the Cent. Dist. of California*, 837 F.2d 413, 414 (9th Cir. 1988) (denying successive removal after the first removal failed because of the district court's own clerical mistake that led it to erroneously conclude that removal was untimely).

Based on these cases, the Court finds that successive removal is barred when the defendant had the ability to allege federal jurisdiction at the first removal, but did not. *See Gordon v. Republic Servs., Inc.*, No. CV 13–00134 GAF (FFMx), 2013 WL 571814, at *2 (C.D. Cal. Feb. 8, 2013) (recognizing that a "defendant can[not] remove prematurely and on the basis of insufficient information and then remove yet a second time, on that same basis"). Since the only thing stopping Kohl's from successfully alleging CAFA jurisdiction at the first removal was its own refusal to analyze its own sales data, the Court concludes that Kohl's has not shown that successive removal is appropriate.

*1. Accrual of putative damages*

In its first opposition to remand, Kohl's argued that the amount in controversy exceeded $5 million, and in the currently pending motion, Kohl's maintains this contention. (Opp'n 4.) Successive removal is appropriate, Kohl's argues, because the amount of putative damages has continued to accrue since the Court's previous Remand Order. Kohl's has continued its Kohl's Cash coupon program unaltered, and Kohl's claims that the total amount now in controversy is considerably higher than it was at the time of the prior removal. (Opp'n 6.) The Court finds that this continued accrual of putative damages does not constitute a change in circumstances that entitles Kohl's to successive removal.

The continued accrual of damages puts Kohl's in no new position compared to where it was a year ago during its first removal attempt. Kohl's is like the defendant

in *Hollinghurst v. Lacoste USA*, No. CV 10-2984 CAS (Ex), 2010 WL 2630365 (C.D. Cal. June 28, 2010), who "could have reasonably concluded from the outset that the amount in controversy would exceed $5 million." *Id.* at *5. The *Hollinghurst* defendant argued that the plaintiff's later discovery responses permitted successive removal, but the court disagreed, "because the new information did not reveal any additional facts that defendant needed to ensure that the amount in controversy would exceed CAFA's $5 million threshold." *Id.* For the same reason, Kohl's continued post-remand sales cannot support successive removal when Plaintiffs have asserted no new theory or facts that affect the amount in controversy. *See Allen v. UtiliQuest, LLC*, No. C 13–4466 SBA, 2014 WL 94337 (N.D. Cal. Jan 9, 2014) (denying successive removal because "the information now proffered by Defendant could—and, indeed, should—have been presented to the Court in opposing Plaintiff's first motion to remand.")

### 2. *Internal sales calculations*

Kohl's claims it expended "considerable effort" calculating the Average Percent Discount figure it now presents to the Court. (Stemper Decl. II ¶ 7.) The Court finds that Kohl's calculation of a sales figure, using data uniquely within its own reach, does not constitute a change in circumstances that permits successive removal.

Kohl's characterizes this figure as "a new fact that it did not previously track," and stresses that it "*did not know* that information." (Opp'n 10 (emphasis in original).) Kohl's also claims in a footnote that it "did not track or possess" the Average Percent Discount. (*Id.*)

Whether or not Kohl's previously tracked or calculated the Average Percent Discount is irrelevant. Without a doubt, Kohl's possessed the information required to calculate the Average Percent Discount, as this information was uniquely within Kohl's own records. This case is squarely apposite to *Andersen v. Schwan Food Co.*, No. EDCV 13–02208 JGB (DTBx), 2014 WL 1266785 (C.D. Cal. March 26, 2014), in which the defendants who sought successive removal "simply relie[d] on

information already in their possession" and did "not show[] that [their internal] records were unavailable to them when they initially sought removal . . . ." *Id.* at *5. The *Andersen* court disallowed successive removal, and the Court must do the same.

Any other outcome would allow a defendant to generate its own right of successive removal simply by making a new calculation based on its own internal data and pointing out that it did not "track or possess" that figure prior to that point. Such a defendant would possess an inexhaustible right to attempt removal as many times as it wishes. Under principles of comity and of judicial economy, the Court cannot countenance such a result. *See In re La Providencia Dev. Corp.*, 406 F.2d 251, 252 (1st Cir. 1969) (recognizing that "[t]he state court proceedings are to be interfered with once, at most" and that an "action must not ricochet back and forth depending on the most recent determination of a federal court").

Kohl's relies on *Alvarez v. Nordstrom, Inc.*, No. CV 10–4378 AHM (AJWx), 2010 WL 11552926 (C.D. Cal. Oct. 5, 2010), as an example of a case where the court allowed successive removal on the same factual basis. That case, however, is thoroughly inapposite. In *Alvarez*, the district court denied the plaintiff's motion for class certification without prejudice and then ordered the defendants to move to remand. *Id.* at *1. The plaintiff did not oppose the remand motion, implicitly signaling that she would no longer pursue a class action. *Id.* After the district court remanded the case, the plaintiff moved for class certification before the state court. *Id.* at *2. The Defendant then removed the case to federal court again, successfully, because the plaintiff's class certification motion in state court marked a change in her position, namely, a renewed desire to proceed on a class-wide basis. *Id. Alvarez* presents a markedly different factual and procedural scenario than the one presented here. Kohl's has pointed to no change in position from Plaintiffs that would justify successive removal.

Plaintiffs' first Motion to Remand was Kohl's opportunity to demonstrate federal jurisdiction before this Court. At that time, Kohl's possessed all the data it

needed to make such a demonstration. Kohl's knew, or should have known, that it was not possible to calculate or estimate the amount in controversy from the total amount of spent Kohl's Cash, without more. What's more, Kohl's knew, or should have known, that the 20% figure it extracted from Plaintiffs' papers to use for its own calculations was presented only as an example, not as an allegation. Even if Plaintiffs *had* alleged that the 20% figure was an average or representative percent discount, it would still have ultimately been Kohl's responsibility to support its amount-in-controversy allegation with evidence. *See Abrego Abrego*, 443 F.3d at 685 ("[U]nder CAFA the burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction.").

Because the Court finds that successive removal is improper in this instance, it **GRANTS** Plaintiffs' Motion to Remand. (ECF No. 24.)

## B. Attorneys' Fees

Plaintiffs maintain that they are entitled to attorney's fees and costs on this motion, because (1) Kohl's successive removal was objectively unreasonable and (2) such an award will deter Kohl's and future defendants from frivolous removals. (Mot. 17–18.) "Absent unusual circumstances, courts may award attorney's fees under [28 U.S.C.] § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *see also Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1063 (9th Cir. 2008) (denying attorney's fees "given the lack of clarity in the law at the time").

With respect to Plaintiffs' request for attorneys' fees, the Court decides to give Kohl's the benefit of the doubt. Successive removal cases from this circuit illustrate that the line between mere new evidence and a truly new factual basis can be blurry. For some courts, "new evidence" may justify successive removal, *see Sweet*, 2009 WL 1664644, at *4; for other courts, "new information" will not, *see Lodi Mem'l Hosp. Ass'n, Inc. v. Blue Cross of California*, No. CIV. 12–1071 WBS GGH, 2012

WL 3638506, at *5 (E.D. Cal. Aug. 22, 2012). There are also courts that have allowed successive removal on the same factual basis after an error on the part of the district court during the first remand, *see Infax*, 72 F.3d at 493, and cases disallowing successive removal in a similar situation, *see Seedman*, 837 F.2d at 414.

Thus, the Court finds that it was not objectively unreasonable for Kohl's to assert that additional damages and internal sales calculations provided a new factual basis for successive removal. The Court, therefore, **DENIES** Plaintiffs' motion for attorneys' fees and costs.

The Court notes that Kohl's has stated an intent to continue attempting to remove the action, should Plaintiffs win this motion. (Esensten Decl. ¶ 20.) With the issuance of this Order, counsel for Kohl's now knows that, should it attempt to remove a third time, it must be able to demonstrate that Kohl's is in a genuinely different position to plead federal jurisdiction than it was during its first two attempts. The Court will likely find further attempts at removal that do not meet this standard to be objectively unreasonable.

### V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's motion to remand, and **DENIES** Plaintiff's request for costs and attorneys' fees. (ECF No. 24.)

**IT IS SO ORDERED.**

April 4, 2018

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**